Filed 2/27/24  County of Riverside v. Stanger CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| COUNTY OF RIVERSIDE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> GARTH L. STANGER, as Trustee, etc., et al., <br><br> Defendants and Appellants. | D082764 <br><br><br> (Super. Ct. No. CVPS2102511) |

APPEAL from a judgment of the Superior Court of Riverside County, Kira L. Klatchko, Judge.  Reversed and remanded.

Law Offices of Kevin E. Monson, Kevin E. Monson for Defendants and Appellants.

Minh C. Tran, County Counsel, Bruce G. Fordon, Kathryn E. Romo, and Braden Holly, Deputy County Counsels, for Plaintiff and Respondent.


Garth L. Stanger and Barbara Stanger (the Stangers), as trustees of The Stanger Family Trust, as amended and restated March 20, 1998 (The Stanger Family Trust) appeal from a judgment in favor of the County of Riverside (the County) in a lawsuit that the County brought to obtain an

injunction against the public nuisance allegedly posed by the unlawful cultivation of cannabis on real property owned by The Stanger Family Trust. Specifically, the Stangers contend that the trial court improperly granted summary judgment in favor of the County on its sole cause of action for nuisance per se, based on which it ordered a permanent injunction. We conclude that summary judgment was improperly granted because triable issues of material fact exist as to whether it is reasonably probable that cannabis cultivation will recur if not enjoined. Accordingly, we reverse the judgment and remand for further proceedings.

I.

FACTUAL AND PROCEDURAL BACKGROUND

A.  *The Stangers Own the Property as Trustees and Lease It to James Parks*

The Stanger Family Trust owns an improved parcel of real property (the Property) in an unincorporated area of the County. The Stangers are trustees of The Stanger Family Trust, and they reside in Utah. According to the Stangers, since 2003 they have leased the Property to James C. Parks, who resides there. Parks states in his declarations that, among other things, he is a former Palm Springs Police Department reserve officer, the General Manager of the Salton Communities Service District, and a member of the Church of Jesus Christ of Latter-day Saints, and he has never used cannabis.

B.  *The Events Leading Up to the Filing of the County's Lawsuit*

This lawsuit arises from the undisputed fact that between August 2020 and April 2021, County officials twice observed the unlawful commercial cultivation of cannabis in greenhouses on the Property. Although County ordinances allow commercial cannabis cultivation under certain circumstances if the appropriate permits are obtained (Riverside County

2

Ordinance (RCO) No. 348.4898), no such permits existed with respect to the Property.

According to the declarations filed by the County in support of its motion for summary judgment, after receiving a complaint from the sheriff's department, a County code enforcement officer went to the Property on August 20, 2020, and was informed by Parks that the cannabis plants belonged to Travis Pearson. The code enforcement officer spoke with Pearson on the Property and was shown at least 300 cannabis plants in a greenhouse.

The County states that on October 14, 2020, it sent a cease and desist letter to (1) the Stangers' address in Utah, (2) Parks's address at the Property, and (3) an address associated with Pearson. The letter stated that the County had determined that unlawful cannabis cultivation was occurring at the Property. Both the Stangers and Parks contend, in their declarations, that they never received the letter. However, Pearson apparently received the letter, because, according to the County, Pearson called a County code enforcement officer to schedule an inspection of the Property. According to the code enforcement officer, on October 20, 2020, he met with Pearson at the Property and observed that all of the cannabis plants were removed.

Approximately six months later, on April 8, 2021, a different code enforcement officer was at the Property and observed what he claimed to be approximately 2,000 cannabis plants in greenhouses.

On May 20, 2021, the County filed a complaint against the Stangers. The Stangers were sued both in their individual capacity and as trustees of The Stanger Family Trust. The complaint contained only one cause of action: "Nuisance per se for illegal land use." (Capitalization omitted.) That cause of action alleged that the Stangers "did and do continue to cause, allow, permit,

3

aid, abet, suffer, or conceal the unlawful Cannabis Cultivation at or from the Property in violation of RCO No. 348."[1]

The complaint sought the following remedies: (1) a judicial declaration that "the existing conditions and activities" on the Property "are in violation of [RCO] No. 348, and are public nuisances per se"; (2) a temporary restraining order, preliminary injunction, and permanent injunction enjoining and prohibiting the Stangers from unlawfully engaging in cannabis cultivation at the Property or anywhere else in the County, including, if necessary, an order authorizing appropriate personnel to enter the Property to enforce the injunction and an order appointing a receiver for the Property to abate the nuisance; (3) civil penalties up to $1,000.00 per violation per day accruing from April 8, 2021;[2] and (4) abatement costs, including reasonable attorney fees.

C.    *The Preliminary Injunction*

The County sought a preliminary injunction, which the Stangers opposed. In opposition, the Stangers both submitted declarations, along with

---

[1]    Although the County refers to RCO No. 348, the more helpful citation is to RCO No. 348.4898. That ordinance, which the County submitted to the trial court in support of its motions, and which accordingly appears in the appellate record (while RCO No. 348 does not), states that it is "an ordinance . . . amending Ordinance No. 348 related to zoning." (Capitalization omitted.)

[2]    The civil penalties were sought pursuant to RCO No. 725, section 11(b), which states that "[a]ny person, whether acting as principal, agent, employee, owner, lessor, lessee, tenant, occupant, operator, contractor or otherwise, who *willfully* violates the provisions of any Land Use Ordinance or any rule, regulation, order or conditions of approval issued thereunder by committing, causing, allowing, maintaining, continuing or otherwise permitting a violation of any Land Use Ordinance shall be liable for a civil Penalty not to exceed $1,000.00 for each day or portion thereof, that the violation continues to exist." (Italics added.)

4

a declaration from Parks. We detail the content of those declarations here because the County subsequently relied upon them to support its summary judgment motion.

In their declarations, the Stangers explained that they did not receive the cease and desist letter that the County claimed to have sent in October 2020, and they had no knowledge of any cannabis cultivation at the Property until the County served its lawsuit on them in June 2021. The Stangers both stated that they would "take every action, including the eviction of Mr. Parks if necessary, to prevent any further problem with cannabis at the Property." They also explained that they had not been at the Property for over 10 years.

In his declaration, Parks stated that, as the lessee of the Property, he rented a greenhouse at the Property to Pearson, an acquaintance of Parks's adult son, so that Pearson could grow cannabis. According to Parks, Pearson told him that he possessed valid medical permits that allowed him to grow cannabis. Parks explained that (1) he never received a cease and desist letter from the County; (2) fire and sheriff personnel who were at the property for the suppression of a fire in June 2020 asked to see the greenhouse and the cannabis plants, and they explained to him at the time that "the County's concern was illegal cannabis cultivation that steals power from County power lines"; (3) the code enforcement officer who came to the Property in October 2020 did not tell him that cannabis cultivation at the Property was unlawful, and he thought the officer was there to confirm that there was no stealing of power; and (4) he was not informed until April 8, 2021, that Pearson's cultivation of cannabis at the Property was unlawful, which he learned when his adult son told him that a County inspector came to the Property and told a woman who worked with Pearson that Pearson's medical permits were not valid for growing cannabis. According to Parks, he immediately took action

5

to ensure that, by April 10, 2021, all of the cannabis was removed from the Property. Parks stated that it was not until he read the complaint in this lawsuit that he learned that growing cannabis in the greenhouses on the Property was in violation of County law, and that the issue was not merely the validity of Pearson's medical permits. Parks stated, "Had anyone simply told me that no cannabis could be grown at the Property, it would never have happened. I always acted in the good faith belief that Pearson had the medical permits necessary to grow the cannabis."

In July 2021, a code enforcement officer inspected the Property and confirmed that no cannabis cultivation was present. In its October 6, 2021 reply memorandum in support of the motion for a preliminary injunction, the County argued that a preliminary injunction was nevertheless still warranted, despite the cessation of cannabis cultivation at the Property, because of "the clear pattern of unlawful cannabis cultivation over the past year in order to prevent further unlawful cannabis cultivation."

The trial court issued a preliminary injunction on October 13, 2021, which enjoined the Stangers from engaging in unlawful cannabis cultivation at the Property or anywhere else in the County.

D.    *The County's Summary Judgment Motion*

The County then filed a motion for summary judgment. The County argued that, based on the undisputed facts, it was entitled to a permanent injunction based on a theory of nuisance per se. The County argued that "[t]he undisputed facts are that [the Stangers] cultivated and/or allowed the cultivation of cannabis plants at the Property and such cultivation is unlawful under RCO Nos. 348 and 725," which created a public nuisance under a theory of nuisance per se. The County relied, among other evidence, on the declarations filed by the Stangers and Parks in connection with the

6

preliminary injunction proceedings, which, according to the County, established that cannabis cultivation had occurred at the Property. Although it specifically sought a permanent injunction in connection with the summary judgment motion, the County did not argue in its summary judgment motion for the award of any civil penalties against the Stangers.

In opposition, the Stangers argued that the County's summary judgment motion should be denied because "[t]here is no cannabis cultivation (or any other cannabis-related activity) at the Property, no cannabis-related equipment at the Property, and no intent to engage in any cannabis-related activity at the Property. There was no cannabis or cannabis-related activity at the Property when [the County] filed this lawsuit. Most important, [the County] presents no admissible evidence to indicate that [the Stangers] had, in any manner, any participation in or notice of the existence or cultivation of cannabis that was completely abated from the Property before this lawsuit." (Emphasis omitted.)

The Stangers submitted a supplemental declaration from Parks in support of their opposition. Parks reiterated that he did not know that Pearson's cultivation of cannabis on the Property was unlawful, and he was, in fact, led to believe by County officials that the cultivation was allowed.

> "At no time before April 8, 2021, did I receive any notice, written or otherwise, from the County that the presence of cannabis was illegal or in violation of any County ordinance. Had I received any such notice I would have ripped out and disposed of any and all cannabis on the Property. When I heard on April 8, 2021, that Mr. Pearson did not have legal permits for the cannabis, I kicked Mr. Pearson off the Property and destroyed all of the cannabis.
>
> "Not only did I not receive any notice before April 8, 2021, that the presence of cannabis on the Property was not permitted, I was told before April 8, 2021, that the cannabis was legal and permitted. After the suppression of the fire at the Property in June of 2020, County fire and sheriff personnel (including

7

Marijuana Task Force personnel) inspected the Property for any other fire hazards, including the greenhouses that had cannabis plants inside. I saw the fire and sheriff personnel inspect the greenhouses. I saw the fire and sheriff personnel talk with Mr. Pearson and inspect his medical permit paperwork. After the County personnel returned the paperwork to Mr. Pearson, the County personnel told me that they saw that there was no boot-legged electrical wiring or other problems with the greenhouses. After the inspection, Mr. Pearson told me that the County personnel told him that there were no problems with the cannabis. Based on my conversations with the County personnel and Mr. Pearson following the fire, my state of mind was that the cannabis was fully legal. Not once did the County personnel (or anyone else) say that the cannabis in the greenhouse was illegal or in violation of County regulations."

In its reply memorandum, the County argued that despite the fact that cannabis cultivation was no longer present at the Property, "[a] permanent injunction should issue against [the Stangers] based on the pattern of unlawful cannabis cultivation, in order to prevent further unlawful cannabis cultivation at [the Property]."

The trial court granted the motion for summary judgment as to the Stangers in their capacity as trustees, but not in their individual capacities. The trial court ruled that, as against the Stangers as trustees, the County was "entitled to judgment as a matter of law for a permanent injunction." The permanent injunction prohibited the Stangers, as trustees, from unlawfully cultivating cannabis at the Property or anywhere in the County. It also specifically required that the Stangers, as trustees: "a. Cease any unlawful Cannabis Cultivation at or from the Property and any other property within the unincorporated areas of [the County], [¶] b. Remove all cannabis, cannabis plants, cannabis-related equipment and supplies, and any and all personal property related to or used in conjunction with the unlawful cannabis cultivation . . . at the Property, and [¶] c. Lawfully remove any

8

construction without permit at the Property, which is related to the unlawful Cannabis Cultivation." The trial court also ordered that the Stangers pay "costs of suit, including but not limited to Code Enforcement costs and reasonable attorney's fees."

The Stangers appeal from the judgment.

## II.

## DISCUSSION

A.    *Standards Governing a Plaintiff's Motion for Summary Judgment*

A motion for summary judgment shall be granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) As the plaintiff bringing the motion, the County has the initial burden of "showing that there is no defense to a cause of action if that party has proved each element of the cause of action entitling the party to judgment on the cause of action." (*Id.*, subd. (p)(1).) Once the County satisfies that burden, the burden shifts to the Stangers to "set forth the specific facts showing that a triable issue of material fact exists as to the cause of action or a defense thereto." (*Ibid.*) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been

9

made and sustained." (*Guz v. Bechtel Nat. Inc.* (2000) 24 Cal.4th 317, 334.)[3] "We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 717.)

B.  *The County Is Not Entitled to Summary Judgment Because a Triable Issue of Material Fact Exists as to Whether It Is Reasonably Probable That Unlawful Cannabis Cultivation Will Recur*

The sole cause of action alleged by the County is based on a theory of public nuisance per se. A nuisance is defined by statute as "[a]nything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway." (Civ. Code, § 3479.) " 'A nuisance may be a public nuisance, a private nuisance, or both.' " (*People ex rel. Trutanich v. Joseph* (2012) 204 Cal.App.4th 1512, 1524.) " 'A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal.' " (*Ibid.*)

---

3    The Stangers filed evidentiary objections to some of the evidence submitted by the County in support of the summary judgment motion. The appellate record contains no indication that the trial court ruled on those objections. "[I]f the trial court fails to rule expressly on specific evidentiary objections, it is presumed that the objections have been overruled, [and] the trial court considered the evidence in ruling on the merits of the summary judgment motion . . . ." (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534.)

"The concept of a nuisance per se arises when a legislative body with appropriate jurisdiction, in the exercise of the police power, expressly declares a particular object or substance, activity, or circumstance, to be a nuisance. . . . [W]here the law expressly declares something to be a nuisance, then no inquiry beyond its existence need be made and in this sense its mere existence is said to be a nuisance per se. . . . [T]o be considered a nuisance per se the object, substance, activity or circumstance at issue must be expressly declared to be a nuisance by its very existence by some applicable law." (*Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1206–1207, citations omitted.) " ' "Where [a legislative body] has determined that a defined condition or activity is a nuisance . . . the function of the courts in such circumstances is limited to determining whether a statutory violation in fact exists, and whether the statute is constitutionally valid." ' " (*People ex rel. Dept. of Transportation v. Outdoor Media Group* (1993) 13 Cal.App.4th 1067, 1076.) " 'A legislatively declared public nuisance constitutes a nuisance per se against which an injunction may issue without allegation or proof of irreparable injury.' " (*Ibid.*)

The Stangers do not dispute that applicable County ordinances establish that unlawful commercial cultivation of cannabis within the County is a public nuisance. Specifically, RCO No. 348, as amended by RCO No. 348.4898, section 19.501, states that "[a]ny Commercial Cannabis Activity that is not expressly provided for in both an approved conditional use permit and a valid Cannabis license issued by the State is prohibited in all zones and is hereby declared a public nuisance that may be abated by the County and is subject to all available legal remedies, including but not limited to civil injunctions." The Stangers also do not dispute that, in the past, cannabis was being cultivated on the Property in violation of County law. Therefore, it

11

is undisputed that a public nuisance existed on the property during the period of cannabis cultivation.

The parties' dispute centers on whether there is a triable issue of material fact regarding the showing needed to obtain a permanent injunction based on a theory of a nuisance per se. The County concedes in its respondent's brief that "injunctions shall not issue where nuisances . . . are unlikely to recur." The County is correct to make that concession, as the principle is well supported by case law. "Because [an] injunction is an extraordinary remedy, the remedy should not be exercised unless it is reasonably probable the acts complained of will recur. 'Injunctive power is not used as punishment for past acts and is ordered against them only if there is evidence they will probably recur. . . . A court of equity will not afford an injunction to prevent in the future that which in good faith has been discontinued in the absence of any evidence that the acts are likely to be repeated in the future.' " (*Feminist Women's Health Center v. Blythe* (1995) 32 Cal.App.4th 1641, 1658 (*Feminist Women's Health Center*).) Consistent with this principle, RCO No. 725, section 11(a), authorizes the County to seek civil injunctive relief only when a person "is engaged in or about to engage in" a violation of a land use ordinance or other applicable law.

Accordingly, to prevail on its lawsuit seeking a permanent injunction based on a theory of nuisance per se, the County must prove that it is *reasonably probable* that unlawful cannabis cultivation will recur on the Property. (*Feminist Women's Health Center, supra*, 32 Cal.App.4th at p. 1658 ["the remedy should not be exercised unless it is reasonably probable the acts complained of will recur"].) As we will explain, the evidence presented during the litigation of the summary judgment motion reveals a triable issue of fact on that subject.

Parks and the Stangers explain that (1) they were unaware that unlawful cultivation was occurring, (2) they took action as soon as they learned of the unlawful cultivation, and (3) they will not allow any unlawful cultivation in the future. If a finder of fact credits those statements, it is quite possible that the County will be unable to prove a reasonable probability that unlawful cannabis cultivation will recur. The County argues that the "repeated confirmed occurrences" of unlawful cannabis cultivation at the Property support an inference that unlawful cannabis cultivation will recur. According to the County, "[w]here there is a pattern of violation, a reoccurrence is likely." We understand the argument, but the County's view of the evidence is only one possible interpretation. It is also possible, from the evidence, to conclude that the repeated unlawful cannabis cultivation on the Property was the result of a series of miscommunications and misunderstandings, as Parks details in his declarations. Under that interpretation of the facts, unlawful cannabis cultivation would be unlikely to recur.

As a triable issue of material fact exists as to whether it is reasonably probable that unlawful cannabis cultivation will recur, the trial court erred in granting summary judgment in favor of the County in the form of a permanent injunction based on a theory of nuisance per se.[4]

_____

[4] Because we reverse the judgment on the ground that a triable issue of material fact exists regarding the reasonable probability that unlawful cannabis cultivation will recur, we need not, and do not, consider the Stangers' additional contention that the judgment should be reversed because a triable issue of fact exists as to whether, as absentee landowners who allegedly lacked any relevant knowledge about the cannabis cultivation, they "created or assisted in the creation of the nuisance." (*City of Modesto Redevelopment Agency v. Superior Court* (2004) 119 Cal.App.4th 28, 38; but see *McClatchy v. Laguna Lands, Limited* (1917) 32 Cal.App. 718, 725 ["all

13

DISPOSITION

The judgment is reversed, and this matter is remanded with directions that the trial court enter an order denying the County's motion for summary judgment and that it conduct further proceedings consistent with this opinion.  The Stangers shall recover their costs on appeal.

IRION, J.

WE CONCUR:

McCONNELL, P. J.

DO, J.

---

parties to a nuisance per se, he who creates it and he who maintains it, are responsible for its effect"].)

14